**08 C 168**

# American Country Insurance Company
### Chicago, Illinois 60602

## DECLARATIONS -- COMMERCIAL EXCESS LIABILITY POLICY

**No. ACE000- 3152**

ACE 0002428
RENEWAL OF NUMBER

Producer:   Code: 0101
American Country Direct Business
222 N. LaSalle Street, Ste. 1600
Chicago, IL  60601

**Item 1.** Named insured and address:

Yellow Cab Company,
A Delaware Corporation
1730 S. Indiana Avenue
Chicago, IL  60616

The named insured is:
- ☐ Individual
- ☐ Joint Venture
- ☐ Other
- ☐ Partnership
- ☒ Corporation

The named insured's business is: _Taxi Cab Co._
_Operations._

**Item 2.** Policy Period: From  06-30-95  to  06-30-96

12:01 A.M., standard time at the address of the named insured as stated herein.

**Item 3.** Minimum Deductible: $  Not applicable

**Item 4.** Our limit of liability for each occurrence:  $ 3,750,000
Aggregate limit of our liability:  $ 3,750,000

Each Offense Limit for Personal Injury & Advertising Injury

$ Not Applicable

**Item 5.** If the policy period stated in Item 2. of the declarations exceeds one year but is less than three years, it consists of the following consecutive periods:

1. First period:    From                to
2. Second period:   From                to
3. Last period:     From                to

If no entry in 3., the period in 2. is the last period.

**EXHIBIT**
**A**
tabbies'

**Item 6.** Premium:

| Premium Basis and Rate | | Annual Advance Premium |
|---|---|---|
| ☒ Flat Premium | | $ N/A |
| ☐ $ _____ of receipts @ $ _____ per $ _____ of receipts | | $ Premium |
| ☐ percent of liability premiums for the following underlying policies: | | $ to |
| ☐ | | $ be |
| | Annual minimum premium | $ determined |
| | Least minimum premium if you cancel this policy | $ 250 |
| | Advance premium for the policy period | $ |
| If the policy period exceeds one year and the premium is to be paid in installments, the premium is payable: | On effective date | $ |
| | On | $ |
| | On | $ |

Endorsements attached to policy at issue:    Schedule A, CGO200 (04/87), E-1003 – Introduction
Section I-Coverages, Section II-Limits of Insurance, Section III-Conditions,
Section IV-Definitions, IL 0021 (11/85)

Countersigned  07-19  19 95  at  Chicago, IL    by  [signature]
07-19-95  EW                                    Authorized Representative

THESE DECLARATIONS WITH THE COMMERCIAL UMBRELLA LIABILITY POLICY FORM, SCHEDULE OF UNDERLYING POLICIES, ENDORSEMENTS, IF ANY, ISSUED TO FORM PART OF THE POLICY JACKET AND COMPLETES THIS POLICY.

*Home Office*
~~ORIGINAL~~

E-1002 (Ed. 5-87)   AC3-204 (5M 4/92)

**JUDGE HOLDERMAN**
**MAGISTRATE JUDGE BROWN**

# American Country Insurance Company

222 N. LA SALLE ST. • CHICAGO, IL 60601

SCHEDULE OF UNDERLYING POLICIES Issued to Form A Part of Policy No. ACE 000- _____3152_____

| CARRIER, POLICY NO. & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS |
|---|---|---|

**(a)**   Standard  Worker's Compensation & Employers' Liability

Coverage B — Employers' Liability
$     Each Accident
$     Policy Limit (Disease)
$     Each Employee (Disease)

**(b)**   Comprehensive General Liability

including

(   ) blanket contractual liability

(   ) completed operations

(   ) products

(   ) personal injury

(   ) broad form P.D.

(   ) XCU hazards

$     General aggregate
$     Products-comp/ops aggregate
$     Personal & advertising injury
$     Each occurence

**(c)**   Comprehensive Automobile Liability

including

(   ) owned automobiles

(   ) non-owned automobiles

(   ) hired automobiles

Bodily Injury Liability
$     each person
$     each occurrence

Property Damage Liability
$     each occurrence
or Combined single limit
$

**(d)**   American Country Insurance Company
ASB 000-1887
12-31-95 to 12-31-96

Surety Bond

$ 350,000.   Excess Bond

An "X" marked in the (   ) provided indicates these broadening or optional coverage are provided in the Underlying Policies at Limits of Liability so indicated on this Schedule.

SCHEDULE A (ed. 7/89)

AC3-218 (2M-7/92)

## COMMERCIAL EXCESS LIABILITY POLICY

### INTRODUCTION

Various provisions in this policy restrict coverage.  Read the entire policy and "underlying insurance" carefully to determine rights, duties and what is covered and not covered.

Throughout this policy the words "you" and "yours" refer to the Named Insured shown in the Declarations.  The words "we," "us" and "our" refer to the Company providing this insurance.

The words "this insurance" mean the excess liability insurance provided under this Coverage Form.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section IV - DEFINITIONS of this Coverage Form.

Page 1

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Section I—Coverages
Coverage A - Excess Liability Coverage

1.  Insuring Agreement

    a.  We will pay those sums, in excess of the amount
        payable under the terms of any "underlying
        insurance", that the insured becomes legally
        obligated to pay as damages because of injury or
        damage to which this insurance applies, provided that
        the "underlying insurance" also applies, or would
        apply but for the exhaustion of its applicable limits
        of insurance.

    b.  We will have the right to participate in the
        defense of claims or suits against the insured
        seeking damages because of injury or damage to which
        this insurance may apply.  We will have a duty to
        defend such claims or suits when the applicable limit
        of insurance of the "underlying insurance" has
        been used up by payment of judgments, settlements and any
        cost or expense subject to such limit.

        This right or duty to defend is limited as set forth
        in paragraph 3, below.

    c.  The amount we will pay for damages and "defense
        expense" is limited as described in SECTION II -
        LIMIT OF INSURANCE.  Damages includes prejudgment
        interest awarded against the insured.

    d.  This insurance is subject to the same terms,
        conditions, agreements, exclusions and definitions as
        the "underlying insurance" except:

        (1)  We will have no obligation under this
             insurance with respect to any claim or suit that
             is settled without our consent; and

        (2)  With respect to any provisions to the
             contrary contained in this insurance.

Page 2

E-1003A

## COMMERCIAL EXCESS LIABILITY POLICY

### Continuation of Section I - Coverages

2. **Exclusions**

The exclusions applicable to the "underlying insurance" also apply to this insurance. Additionally, this insurance does not apply to:

a. Any obligation to pay expenses under any medical payments coverage.

b. Any obligation to reimburse an insurer as provided by the terms of the "Endorsement For Motor Carrier Policies of Insurance For Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980" or under the terms of any similar endorsement required by Federal or State statute.

c. Any obligation imposed by law under any automobile no-fault, uninsured motorist, underinsured motorist, workers compensation, disability benefits or unemployment law or any similar law.

d. To injury, sickness, disease or death due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing.

e. To any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident out of the operation thereof.

f. To any employee with respect to injury to or sickness, disease or death or another employee or the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer.

g. This insurance shall only apply to the named insured designated at item 1 of the Declarations and shall not apply to any person operating a motor vehicle with the express or implied consent of the named insured.

h. We will not be liable to pay any portion of any final award or judgment for injuries or damages, either compensatory or punitive, caused by the intended or expected acts of willful or wanton misconduct entered against a natural person operating a taxicab.

i. Without increasing our liability under this policy, we agree to pay any award or judgment which may, in accordance with the law of vicarious liability, be

E-1003A

-2-

entered against the named insured for damages or
injuries caused by the intended or expected acts of
intentional or willful or wanton misconduct of your
agents, servants, lessees, or permittees in the
operation of a taxicab.

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Continuation of Section I - Coverages

3.  **Defense Of Claims Or Suits**

   a.  When we have the duty to defend, we will pay for all "defense expense" once our duty to defend begins. We may make investigation of any claim or suit as we think appropriate.

   If we exercise our right to defend when there is no duty, we will pay only that "defense expense" we incur.

   If we provide a defense, we may investigate any claim or suit at our discretion. We may settle such claim or suit within the Amount of Insurance available at the time of the settlement.

   b.  Our right or duty to defend ends when we have used up the Amount of Insurance available in the payment of any combination of judgements, settlements or "defense expense," as provided under SECTION II - LIMIT OF INSURANCE. This applies both to claims and suits pending at that time and those filed thereafter.

   c.  When we control the defense of a claim or suit, we will pay for the "defense expense." If by mutual agreement or court order the insured assumes control before the applicable Amount of Insurance available is used up, we will reimburse the insured for reasonable "defense expense." In either case, the amounts we pay will reduce the Amount of Insurance available as provided under SECTION II LIMIT OF INSURANCE.

   d.  As soon as practicable after we become aware that an Amount of Insurance available is used up:

      (1)  We will notify you of any outstanding claims and suits subject to that Amount; and

      (2)  You will then arrange to assume control of the defense of all such claims and suits against you or any other insured when our right or duty to defend them ends.

Page 5

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Continuation of Section I - Coverages

e.   We will assist the insured in the transfer of
     control of the defense of claims and suits under c.
     or d. above. Until such arrangements are completed,
     we will take on behalf of any insured those steps
     that we think appropriate:

     (1)  To avoid a default in any claim or suit; or

     (2)  To the continued defense of a claim or suit.

     You agree that if we take such steps:

     (1)  We do not waive or give up any of our rights
          under this insurance; and

     (2)  You will reimburse us for any "defense
          expense" that arises out of such steps if the
          applicable Amount of Insurance available has
          been used up.

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Section II
Coverage A - Limits of Insurance

1.  The Limits of Insurance shown in the Declarations and the
    rules below fix the most we will pay under the terms of
    this insurance regardless of the number of:

    a.  Insureds;

    b.  Claims made or suits brought;

    c.  Persons or organizations making claims or bringing
        suits.

2.  With respect to injury or damage arising out of the
    ownership, operation, maintenance, use, loading or
    unloading, or entrustment to others of an auto, the Each
    Incident Limit is the most we will pay for the sum of
    damages under Coverage A because of all injury and damage
    arising out of any one "incident."

3.  The Limits of this policy apply separately to each
    consecutive annual period and to any remaining period of
    less than 12 months, starting with the beginning of the
    policy period shown in the Declarations, unless the
    policy period is extended after issuance for an
    additional period of less than 12 months. In that case,
    the additional period will be deemed part of the last
    preceding period for purposes of determining the Limit
    of Insurance.

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Continuation of Section III - Conditions

c.  You and any other involved insured must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a suit;

(2)  Authorize us to obtain records and other information;

(3)  Cooperate with us in the investigation, settlement or defense of the claim or suit; and

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(5)  Notify us immediately of any judgement or settlement of any claim or suit brought against any insured.

d.  No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

4.  Maintenance of Underlying Insurance

a.  You agree to maintain the "underlying insurance" in full force and effect during the term of this policy, and to inform us within 30 days of any replacement of that "underlying insurance" by the same or another company

b.  You must notify us immediately:

(1)  Of any changes to the "underlying insurance." We may adjust our premium accordingly from the effective date of the change to the "underlying insurance";

(2)  If any "underlying insurance" is cancelled or not renewed and you do not replace it.  Except as provided in paragraph (3) below, we may cancel the portion of this insurance that applies to that "underlying insurance" as of the date of termination of the "underlying insurance."

Page 9

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

**Section III - Conditions**
**Coverage A**

If any of the following conditions are contrary to Conditions
contained in the "underlying insurance" the provisions
contained in this policy apply.

1.  **Appeals**

    In the event the "underlying insurer" elects not to
    appeal a judgment in excess of the limits of the
    "underlying insurance," we may elect to make such
    appeal.  If we so elect, we shall be liable, in addition to the
    applicable Amount of Insurance, for all "defense
    expenses" we incur.

2.  **Bankruptcy Of Underlying Insurer**

    In the event of bankruptcy or insolvency of any
    "underlying insurer," the insurance afforded by this
    policy shall not replace such "underlying insurance,"
    but shall apply as if the "underlying insurance" was
    valid and collectible.

3.  **Duties In The Event Of Incident, Claim Or Suit**

    a.  You must see to it that we are notified as soon as
        practicable of an "incident" which may result in a
        claim to which this insurance applies.  To the extent
        possible notice should include:

        (1)  How, when and where the "incident" took place;

        (2)  The names and addresses of any injured persons
             and witnesses; and

        (3)  The nature and location of any injury or damage
             arising out of the "incident."

    Notice of an "incident" is not notice of a claim.

    b.  If a claim is received by any insured you must:

        (1)  Immediately record the specifics of the claim
             and the date received; and

        (2)  Notify us as soon as practicable.

    You must see to it that we receive written notice of
    the claim as soon as practicable.

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Continuation of Section III - Conditions

    c.  No statement contained in this Condition limits our right to cancel or not renew this Policy.

5.  Other Insurance

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

6.  Policy Period

If the "underlying insurance" does not apply on a claims-made basis, this insurance will respond to injury or damage that occurs, or arises from an offense committed, during the policy period of this insurance shown in the Declarations.

7.  Cancellation

    a.  You may cancel the policy by mailing it to us or by giving us advance written notice of the date cancellation is to take effect.

    b.  When this policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing the first Named Insured notice of cancellation stating the reasons for cancellation.

        (1)  Nonpayment of premium.

        (2)  The policy was obtained through a material misrepresentation.

        (3)  Any "insured" has violated any of the terms and conditions of the policy.

        (4)  The risk originally accepted has measurably increased.

        (5)  Certification to the Director of Insurance the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Continuation of Section III – Conditions

  (6) A determination by the Director of Insurance
     that the continuation of the policy could place
     us in violation of the Illinois insurance laws.

 c. If we cancel for nonpayment of premium, we will mail
   you at least 10 days written notice.

 d. If this policy is cancelled for other than nonpayment
   of premium and the policy is in effect:

  (1) 60 days or less, we will mail you at least 30
     days written notice.

  (2) 61 days or more, we will mail you at least 60
     days written notice.

 e. If this policy is cancelled, we will send you any
   premium refund due.  If we cancel, the refund will be
   pro-rata.  If you cancel, the refund may be less than
   pro-rata.  The cancellation will be effective even if
   we have not made or offered a refund.

 f. The effective date of cancellation stated in the
   notice shall become the end of the policy period.

NON-RENEWAL

If we decide not to renew or continue this policy, we will
mail you, your agent or broker and the loss payee written
notice at least 60 days before the end of the policy period.
If we offer to renew or continue and you do not accept, this
policy will terminate at the end of the current policy
period.  Failure to pay the required renewal or continuation
premium when due shall mean that you have not accepted our
offer.

If we fail to mail proper written notice of non-renewal and
you obtain other insurance, this policy will end on the
effective date of that insurance.

MAILING OF NOTICES

Any notice of cancellation or non-renewal will be mailed to
your last known address.  Proof of mailing of any notice
shall be sufficient proof of notice.

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Continuation of Section III - Conditions

8.  Premium Determination

The minimum and deposit premium is stated in Item 4 of the
policy declarations..  The deposit premium is an estimate
and is to be adjusted within 60 days of expiration based
upon the average number of vehicles insured during the
Contract term at a rate of $34. per vehicle.

Section IV - Definitions
Coverage A

1.  "Defense expense" means payments allocated to a specific
claim or suit for its investigation, settlement, or
defense, including:

    a.  Attorney fees and all other litigation expenses.

    b.  The cost of bonds to appeal a judgement or award in
        any suit we defend.

    c.  The cost of bonds to release attachments, but only
        for bond amounts within the Amount of Insurance
        available.

    d.  Reasonable expenses incurred by the insured at our
        request to assist us in the investigation or defense
        of the claim or suit, including actual loss of
        earnings  up to $100 a day because of time off from
        work.

    e.  Cost taxed against the insured in the suit.

    f.  Interest on the full amount of any judgment that
        accrues after entry of the judgment and before we
        have paid, offered to pay, or deposited in court the
        amount available for the judgment under the
        provisions  of SECTION II - LIMITS OF INSURANCE.

"Defense expense" does not include:

    a.  Salaries and expenses of our employees or the
        insured's employees, other than:

Page 12

E-1003A

COMMERCIAL EXCESS LIABILITY POLICY

Continuation of Section IV - Definitions

(1) That portion of our employed attorneys' fees, salaries and expenses allocated to a specific claim or suit; and

(2) The expenses described in e. above.

    b. Fees and expenses of independent adjusters we hire.

2. "Incident" means:

    a. With respect to bodily injury to persons other than your employees and property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

    b. With respect to bodily injury to your employees arising out of and in the course of their employment by you, the accident or disease which causes the "bodily injury".

3. "Occurrence limit" means any specific limit, other than an "aggregate limit," applicable to any "underlying insurance," regardless of whether such limit is subject to an "aggregate limit" in the "underlying policy."

4. "Underlying insurance" means the liability insurance coverage provided under policies shown in Schedule A, for the limits and periods indicated. It includes any issued to replace those policies during the term of this insurance that provide:

    a. At least the same policy limits;

    b. The same hazards insured against, except as modified by general program revisions or as agreed to by us in writing.

"Underlying insurance" also includes any Extended Reporting Periods on the policies shown in the Declarations. It includes only policies shown in the Declaration or endorsed onto this policy.

5. "Underlying insurer" means any insurer who issues a policy of "underlying insurance."

6. "Underlying policy" means a policy providing "underlying insurance."

Page 13

E-1003A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** CANCELLATION (Common Policy Conditions) is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2.a. We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

   a. You; and

   b. The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   a. On the expiration date if:

      (1) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

      (2) We have indicated our willingness to renew this policy to you or your representative; or

      (3) You have notified us or our agent that you do not want to renew this policy.

   b. On the effective date of any other insurance replacing this policy.

**C.** Mailing of Notices

   We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice

CG 02 00 04 87            Copyright, Insurance Services Office, Inc., 1987                    □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material."

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

ATTACHED TO AND FORMING A PART OF SURETY BOND NO. ASB 000-1887

### INDEMNITY FOR LOSS CAUSED BY
### UNINSURED MOTORIST AND
### HIT-AND-RUN DRIVERS

The Principal and Surety herein ("the Company") jointly and severally agrees to pay all sums which the Claimant or his/her legal representative shall be legally entitled to recover as compensatory damages from the owner or operator of an uninsured motor vehicle because of bodily injury, including death resulting therefrom, hereinafter called bodily injury, caused by the uninsured motor vehicle.

No judgment against any person or organization alleged to be legally responsible for the bodily injury damage shall be conclusive, as between the Claimant and the Company, of the issues of liability of such person or organization or of the amount of damages to which the Claimant is legally entitled unless such judgment is entered pursuant to an action prosecuted by the Claimant with the written consent of the Company.

### DEFINITIONS

Bodily Injury means:

Bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the operation of the scheduled motor vehicle.

Claimant means:

(a) The operator of the scheduled vehicle to which this surety bond applies, provided:

(i) The operator has a valid lease with the Principal of the bond to operate the scheduled vehicle, or is an employee of the Principal while operating said scheduled motor vehicle in the course and scope of his employment; and

(ii) The operator is not the named insured, spouse of the named insured, or otherwise qualifies as an insured under any policy of motor vehicle insurance providing coverage under the provisions of § 5/143a of the Illinois Insurance Code; and

(iii) The operator is operating the scheduled vehicle in the actual transportation of fare-paying passengers or in the pursuit of the transportation of fare-paying passengers.

# E N D O R S E M E N T  AMERI    COUNTRY DIRECT BUSINESS

**#0101**

**#1**

IT IS HEREBY UNDERSTOOD AND AGREED THAT SCHEDULE A— SCHEDULE OF UNDERLYING POLICIES IS REVISED AND ATTACHED.

Nothing herein contained shall vary, alter or extend any provision or condition of this Policy, other than as above stated.

This endorsement shall take effect _____ **JANUARY 01,** _____ 19 **95** . **12:01 A.M.** standard time at the Named Insured's address, and shall terminate simultaneously with this Policy.

To be attached to and form a part of Policy No. _____ **ACE 0003152** _____

issued to ____ **YELLOW CAB COMPANY, A DELAWARE CORPORATION** ____

by **AMERICAN COUNTRY INSURANCE COMPANY.**

**12-15-95NJL**
Not valid unless countersigned by a duly authorized representative of the Company.

Countersigned by: _____

**AUTHORIZED REPRESENTATIVE**

AC 3-102 (2500 4/94)

"REVISED"
ENDT. #1    EFF: 01-01-96

# American Country Insurance Company

222 N. LA SALLE ST. • CHICAGO, IL 60601

#0101 AMERICAN COUNTRY DIRECT BUSINESS

SCHEDULE OF UNDERLYING POLICIES Issued to Form A Part of Policy No. ACE 000- 3152

| CARRIER, POLICY NO. & PERIOD | TYPE OF POLICY | APPLICABLE LIMITS |
|---|---|---|
| (a) | Standard Worker's Compensation & Employers' Liability | Coverage B — Employers' Liability $ Each Accident $ Policy Limit (Disease) $ Each Employee (Disease) |
| (b) | Comprehensive General Liability including ( ) blanket contractual liability ( ) completed operations ( ) products ( ) personal injury ( ) broad form P.D. ( ) XCU hazards | $ General aggregate $ Products-comp/ops aggregate $ Personal & advertising injury $ Each occurence |
| (c) AMERICAN COUNTRY YP 1000 01-01-96 TO 12-31-96 | Comprehensive Automobile Liability including ( X ) owned automobiles ( ) non-owned automobiles ( ) hired automobiles | Bodily Injury Liability $ each person $ each occurrence Property Damage Liability $ 350,000. each occurrence or Combined single limit $ |
| (d) | | |

An "X" marked in the ( ) provided indicates these broadening or optional coverage are provided in the Underlying Policies at Limits of Liability so indicated on this Schedule.

SCHEDULE A (ed. 7/89)                                    AC3-218 (2M-7/92)

## INDEMNIFICATION AGREEMENT

YELLOW CAB COMPANY, a Delaware Corporation for and in consideration of AMERICAN COUNTRY INSURANCE COMPANY issuing Excess Policy Number ACE 000-3152 in the sum of Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000.00) excess of Three Hundred Fifty Thousand Dollars ($350,000.00) for the benefit of the following:

YELLOW CAB COMPANY, a Delaware Corporation does hereby agree to indemnify and hold harmless said AMERICAN COUNTRY INSURANCE COMPANY against any loss whatsoever, over the first Three Hundred Fifty Thousand Dollars ($350,000.00) up to Two Hundred Fifty Thousand Dollars ($250,000.00) for each loss, including any claim, suit, costs or attorneys fees incurred by AMERICAN COUNTRY INSURANCE COMPANY by reason of the issuance of said Policy Number, ACE 000-3152.

DATED THIS _____ DAY OF ____JULY____, 1995

YELLOW CAB COMPANY,
a Delaware Corporation

By _____

WITNESS

WITNESS